(C. D. 1638)

COTY, INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided August 6, 1954)

*Lane, Young & Fox (William H. Fox* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

### Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: While the pertinent portions of the Internal Revenue Code (26 U. S. C.) involved in this case are set forth in the margin,[1] it will perhaps simplify matters if the following narrative statement of the statutory law and facts is considered to represent the situation involved:

Section 2490 of the Internal Revenue Code imposes an import tax or duty upon certain products or classes of products named in various

---

[1] Ch. 22, Internal Revenue Code, entitled "Fish, Animal, and Vegetable Oils":

§2490.  Imposition of tax.

In addition to any other tax or duty imposed by law, there shall be imposed upon the following articles imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates set forth in section 2491, to be paid by the importer.  (53 Stat. 267.)

§2491.  Rate of tax.

(a)  * * * tallow, * * * fatty acids derived from any of the foregoing, and salts of any of the foregoing; all the foregoing, whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound * * *.

[Note:  By the provisions of the General Agreement on Tariffs and Trade, reported in T. D. 51802, the foregoing rate, *insofar as it applied to inedible tallow,* was reduced to 1½ cents per pound.]

    \*        \*        \*        \*        \*        \*        \*

(c)  Any article, merchandise, or combination (except oils specified in section 2470), 10 per centum or more of the quantity by weight of which consists of, or is derived directly or indirectly from, one or more of the products specified above in this paragraph or of the oils, fatty acids, or salts specified in section 2470, a tax at the rate or rates per pound equal to that proportion of the rate or rates prescribed in this paragraph or such section 2470 in respect of such product or products which the quantity by weight of the imported article, merchandise, or combination, consisting of or derived from such product or products, bears to the total weight of the imported article, merchandise, or combination * * *.

    \*        \*        \*        \*        \*        \*        \*

Ch. 21, Internal Revenue Code, entitled "Coconut and Other Vegetable Oils":

§2470.  Tax—(a)  Rate—(1)  In general.

There shall be imposed upon the first domestic processing of * * * palm-kernel oil, fatty acids derived from any of the foregoing oils, salts of any of the foregoing (whether or not such oils, fatty acids, or salts have been refined, sulphonated, sulphated, hydrogenated, or otherwise processed), * * * a tax of 3 cents per pound to be paid by the processor.

provisions of the said code which are in the nature of raw material oils, fats, or greases. Among these products is inedible tallow (section 2491 (a)). Further, the said code (by the same section) imposes a tax or duty upon the importation of the results of processing such raw materials, e. g., upon fatty acids derived from such oils, fats, or greases, and upon salts of such fatty acids.

Finally, by section 2491 (c), the code imposes an import tax or duty upon imported articles 10 per centum or more of the quantity by weight of which consists of, or is derived directly or indirectly from, any of the specified oils, fats, or greases or fatty acids, or salts of fatty acids derived therefrom, or from any of the oils, fatty acids, or salts specified in section 2470 of the said code (including palm-kernel oil and fatty acids and salts derived therefrom). It is to be especially noted, since it is the focal point of this case, that the rate of tax or duty so imposed upon imported articles under the code is dependent upon *one* of *two* bases: (1) The rate imposed upon the product or products of which the imported article in part *consists*, or (2) the rate imposed upon the product or products from which the imported article was in part *derived* directly or indirectly.

The merchandise at bar is soap in cake form. As imported it weighed 9,769 pounds. It was manufactured as follows: Inedible tallow and palm-kernel oil were put into a large vat and melted by heating. A lye solution (sodium hydroxide) was then added, and all these substances were mixed together and heated until saponification was complete. The addition of the lye solution caused the tallow and the palm-kernel oil to saponify, splitting these materials into soap (sodium salts of fatty acids) and glycerin. The glycerin was removed from the mixture and so-called "fillers" and "perfumes" were added to the soap mass, i. e., to the sodium salts of fatty acids, and the resulting combination was thereafter formed into cakes of soap as imported.

While it is agreed that as imported the soap contained 90.3 percent of salts of fatty acids, it is not stated that this percentage was by weight. However, it does not seem to be disputed that 86.835 percent by weight of the imported soap consisted of salts of fatty acids. derived from inedible tallow and palm-kernel oil.

In view of the fact that the salts of fatty acids, of which the stated percentage of the imported soap consisted, were themselves derived from the inedible tallow and the palm-kernel oil, it is also fair and correct to say that 86.835 percent by weight of the imported soap was derived, directly or indirectly, from inedible tallow and from palm-kernel oil.

There is, therefore, no question but that the imported soap is subject to import tax or duty under sections 2490 and 2491 (c) of the Internal Revenue Code. The question at issue is the rate of tax or

duty to be assessed under the formula set out in section 2491 (c), *supra*.

The rate of tax or duty applicable to salts of fatty acids of both inedible tallow and palm-kernel oil is 3 cents per pound (sections 2491 (a) and 2470 (a) (1)). The rate of tax or duty applicable to inedible tallow is 1½ cents per pound (section 2491 (a), as modified by the General Agreement on Tariffs and Trade, T. D. 51802), and the rate of duty applicable to palm-kernel oil is 3 cents per pound (section 2470 (a) (1)).

The collector of customs assessed tax or duty on the imported soap at the rate of 2.60505 cents per pound on the ground that 86.835 percent of the said imported soap consisted of salts of fatty acids derived from inedible tallow and palm-kernel oil. That is to say, the collector based his assessment upon the fact that more than 10 percent by weight of the imported soap *consisted* of salts of fatty acids of inedible tallow and palm-kernel oil.

Through its protest, the importer herein contends that the tax or duty should have been assessed upon the basis of the rates applicable to the starting materials, i. e., inedible tallow and palm-kernel oil. That is to say, the protest claim is that the tax or duty should have been determined upon the fact that more than 10 percent by weight of the imported soap was *derived* directly or indirectly from inedible tallow and palm-kernel oil. As the rate applicable to inedible tallow (1½ cents per pound) is lower than that applicable to salts of fatty acids of inedible tallow (3 cents per pound), the rate claimed is lower than the rate assessed.

It is plaintiff's argument that Congress intended by the Internal Revenue Code provisions here involved to tax imported articles on the basis of the taxable so-called "starting materials," of which the imported articles consist or were derived. Plaintiff points out that the record shows that the production of the imported soap did not start out with salts of fatty acids of inedible tallow and palm-kernel oil, but started out with inedible tallow and palm-kernel oil, and that the salts of fatty acids found upon importation never had an independent existence as such apart from the processing which occurred in the manufacture of the imported soap.

Plaintiff contends that there is manifest legislative intent that the tax imposed under section 2491 (c) should in all instances be determined on the basis of the tax specified for the starting material or materials from which the imported article was derived, whether directly or indirectly. Thus, it is pointed out that the alternative provisions taxing imported articles which *consist of*, or are *derived directly or indirectly from*, the taxable products are a recognition by Congress that some of the taxable products do not retain their original form when used in the production of other goods. Under plaintiff's theory, the provision for taxing imported articles on the basis of the

taxable product or products of which they *consist* wo be limited to those instances where the taxable product was a starting material for the production of the imported article.

In further support of its contention, plaintiff's counsel points out in the brief filed in its behalf that in the provisions of the Internal Revenue Code imposing excise, as distinguished from import, taxes upon coconut and certain other vegetable oils (among them palm-kernel oil), the tax is placed upon the first domestic processing of the taxable products. See Chapter 21, Internal Revenue Code, entitled "Coconut and Other Vegetable Oils," being sections 2470 *et seq.* Plaintiff reasons that an excise tax upon the first domestic processing of taxable products is akin to an import tax based upon the taxable starting materials, and would thus draw a parallel between the excise and import taxes provided for in the code.

If the provisions of the Internal Revenue Code with respect to import taxes or duties, while highly complex, were not so readily susceptible of application when interpreted as written, plaintiff's contentions would be very persuasive. We agree that it is clear that the provisions of the code applicable to imported articles were intended to be, in some degree, counterparts of the provisions applicable to the production of revenue from purely excise or inland levies in the form of processing taxes. Nevertheless, it is also clear to us that because of the differing nature of the two kinds of levies— domestic processing taxes on the one hand and import taxes on the other—some diversity in application became necessary.

As we read the provisions of section 2491 (c), under which the imposition here involved was made, Congress simply provided alternative bases upon which the tax imposed upon imported articles, 10 per centum or more of the quantity by weight of which consists of, or is derived directly or indirectly from, certain taxable products, could be determined. To our minds, there is nothing to show that Congress evidenced an intent that if an imported article responded equally to *both* bases, as is the case here, one should be preferred above the other, except insofar as Congress, in establishing rules for the interpretation of the provisions of the Tariff Act of 1930, has provided a solution for such a situation.

In section 2493 of the Internal Revenue Code, under the heading "Assessment and payment," it is provided that—

The tax imposed under section 2490 shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act * * *

with certain exceptions not material here.

We are of the opinion that, under the circumstances, the last sentence of paragraph 1559 of the Tariff Act of 1930 is applicable to the situation. That provision reads as follows:

* * * If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

That is simply the situation which obtains here. The imported soap comes equally within each of the two alternative bases upon which the rate of duty applicable thereto may be determined, and under the foregoing provision it is subject to duty at the higher of the two rates.

The protest claim is therefore overruled, and judgment will issue accordingly.

(C. D. 1639)